I start the proceedings this morning with a motion that I shall make. It is my great pleasure to move the admission of Kirsten Eileen Braun to the bar of this court. Ms. Braun is a member of the bar in good standing of the highest court of Virginia. I have knowledge of her credentials. I am satisfied that she possesses the necessary qualifications. And I know all of this from direct personal experience. Ms. Braun has been my law clerk and is continuing to the end of her service in that position, which will be this summer. And I am delighted, indeed, to move her admission to the bar of this court. However, I must invite my colleagues to consult and determine their action on this motion. Well, I regard Judge Newman's advocacy as very compelling, Judge Taranto. I will concur. Then we will grant the motion. If you will approach the clerk, she will administer the oath. In your account, you tell him where, or from, that you support yourself, the attorney, uprightly and according to law, and that you support the Constitution. Thank you, and welcome to the bar. We look forward to seeing you in a more active role in that position in the future. Now I proceed to call the first case, the first argued case this morning, is number 2012-1615, Cooper Notification against Twitter, Incorporated, and others. Mr. Andre. May it please the court. There are several errors of law and fact that were committed by the district court, the most obvious being the claim construction. The district court's second claim construction, the revised claim construction, ran afoul of both the claim language, the specification, the prosecution history, and how one of ordinary skill would understand the ordinary meaning of what the claim meant. With respect to the claim language itself, the district court construed the gateway message limitation in such a way that the gateway message had to be formed and unchanged through the entire transmission process. That is directly contrary to the claim language. What is the significance of the CTO's decision on the district court's actions? In this particular instance, because it's an ongoing prosecution, I don't think it should have any weight at all. Well, obviously it's not compelling. It's not binding, but it could have been persuasive. It seems to have been persuasive. And even though it wasn't final, there was reasoning from the PTO. There was the reasoning from the PTO that I believe the district court misapprehended on the technology aspect of it. Well, didn't the PTO and the court of its own accord distinguish between claims 1 to 11 and 12? The PTO distinguished between those two claims correct. The district court in the initial claim construction did not, and then afterwards tried to distinguish between the two, and that's where the misapprehension of the technology came into play. The fact of the matter is that those skilled in the art, for example, and both sides experts realized that one was a method claim, the other was a system claim for the same type of process. So when they tried to distinguish 1 and 12 as somehow a different type of claim, one being transmitted all the way through to the end and the other being transmitted to the gateway, I think that the court misapprehended what the claim was. It did read the rest of the claim as it were. So in that instance, while I agree that it's not binding, and because it is ongoing, I think there should be very little wait to answer your question. Can I ask you this? It seems to me you have two, a broader and a narrower, two arguments about claim construction. One, the narrower one, is that even if the gateway message has to get to the user and presumably, therefore, actually be the second message, that doesn't mean it has to get there without a single change of any bits. That's a narrow position. You have a broader position, which I think maybe you were just talking about, which is more troubling to me, that any number of changes can be made at the gateway to take the message it receives, namely the gateway message, and create a new, different second message. That one, I guess, A, I'm not sure you need, but B, I find much more troublesome. I would just, with all due respect, clarify that it's not a brand new message. I'm taking the original message and modifying it to some degree. I think that's what the claim 12 talks about. The processing of the gateway message by the communication gateway would allow for that gateway message to reach the end user as a second message. So I guess, I mean, I'm partly out of limited time. I guess I'm much more interested in what your argument is for reversing the summary judgment of non-infringement on the assumption that it's your narrower position that's, just take for granted that your narrower position is right, namely that the gateway message has to get to the user, but that doesn't mean there can be no change whatsoever. That's correct. So the reverse summary judgment on that position, the gateway message can get to the user, and when it talks about forming the address, for example, later in the claim, by definition, that's changing the gateway message. It's forming an address for the user information. It's not part of the gateway message. It's an addition to the gateway message. So the claim language itself dictates that this claim, the summary judgment needs to be reversed. So with that in mind, the two positions, one that there has to be two separate messages received that the district court determined, that is nonsensical. I should say I literally could find nothing that the district court said to even suggest that two separate messages have to be received. It was in the finding of non-infringement under JA Joint Appendix 33 in which the district court stated that what we argued was it received a second message, and we didn't argue that it received the gateway message. So by almost explicit definition... That's, I guess, what I was not persuaded of. The way that I read Claim 12, partly because there is no other antecedent basis for second message, is that in Claim 12, the second message is the gateway message. In fact, it would be indefinite for lack of an antecedent basis if that were not true. But I should say, I'm not sure why you don't have an argument for reversal of summary judgment, even on the assumption that the gateway message must get to the user, but that allows some changes like address changes, but no changes in the communicative content portion. And that was our argument in a nutshell. What our expert testified to in deposition and in his expert report was that the gateway message is transmitted to the end user, and the end user receives the gateway message in the form of a second message. There may be some modifications to that, like stripping out some of the addresses that were added on to the gateway message. So our expert actually provided that factual testimony, which is another reason why summary judgment should be reversed because, once again, that's a factual issue. Doesn't this argument require that we just ignore the action of the cancellation of Claims 1 through 11, or drawing any implications with respect to disclaimer, or whatever the reasons might have been that aren't stated on the record? Well, with regards to Claims 1 through 11, as I said during the reexamination, which is still pending, they have been rejected as current. We believe that will be reversed. You're saying they were not withdrawn? Well, they were withdrawn from the case, but that was due to an infringement issue. They're method claims, which the very first step requires a third party to do something. And we were trying to do the joint infringement with direction and control, and we just didn't have the proof for the joint infringement theory. What do you say should be made of withdrawing those claims from the case? Well, it was just something that happens in most patent cases, that claims are added and withdrawn based on discovery. And we withdrew those claims after we faced discovery and could not get the evidence that they had direction and control of these third parties. Now, with the Ackermann case and the McKesson case, with inducing infringement, we'd like to reassert those claims. In fact, one of our arguments was the district court should not have dismissed those claims with prejudice for that very reason. But didn't counsel for your client say, they're done, we'll never bring these claims again? It was actually me who said that if this case goes to fruition, that we would be precluded from bringing these claims again because of the software factor. Exactly, and so here you are asking us to reinstate those claims. Well, because the case is not concluded. We try to reinstate those claims while the case is still pending. The case was still pending. So when the law changed, when the McKesson case and the Ackermann case came down, that changed the law of inducing infringement, which made those claims viable claims for us again. And change of law while the case is pending does permit us to reassert those claims. Isn't there, I guess, two things on Claim 1 through 11. Which element involves some question about single person performance? The very first element talks about registering. Someone has to register for the service. That's the third party that we're talking about. So the very first element in Claim 1 talks about someone registering to get these services. And when we were trying to make the argument that somehow they had direction control, they had these people register, but that was just a very hard argument to make. But you had said you would stipulate and propose the stipulation, if I remember right, after the August 2011 Ackermann decision and then changed course about a month later. That is, the Ackermann decision did not intervene between your proposing to enter a stipulation of dismissal with prejudice and your saying, oh, no, no, we don't want to. It wasn't our proposal. It was the defendant's proposal. And when they made it with prejudice, we refused to sign it. We said we'd dismiss the claims without prejudice. We didn't sign that proposal for that very reason. We said at the end of the case, when all is decided, it's all said and done. If we get a final decision and we have not served those claims, we're not going to be able to go back. But you didn't say that. Instead, you told the judge that they don't have to worry about these claims anymore. So what's the court supposed to make of that? They have to worry about it until it's all changed. I mean, I don't think there's anything binding in the argument when we talk about the court, if this case goes to fruition. It's not binding, what you tell the court? An open court or a closed court? It is binding if the case is going to fruition. They would not have to worry about it. We would have been stopped, and that's why I said it. You didn't say that. You just said they don't have to worry about it. It's over. Well, I believe what I talked about, there would be a stop effect. So that presumes the case would have gone to fruition at that point. I was off by a year about Akamai, but they also relied on your statement that you would withdraw, and I thought it was that you would withdraw with prejudice. And in submitting their expert reports, I think a week or so later, not even addressing claims 1 through 11. So this is not like a statement you made that had no consequences, no reliance. This is one in which their expert reports were shaped by your assertion that these claims were not going to be prosecuted anymore. And based on the current law at the time, that was our position. And I think just the intervening law created those circumstances with the Akamai and McKesson case that changed, that gave us the opportunity to assert those claims. But those claims, by dropping those, that had nothing to do with what's happening in the reexamination. It should not have anything to do with the claim construction. Okay. Let's save you rebuttal time. Let's hear from the other side. Thank you, Your Honor. May it please the Court. Dave Madden for Twitter and the other defendants. Let me just start with what you're discussing, which is the dismissal of claims 1 through 11. Your Honor, it is correct that Mr. Andre sent us an email saying, quote, yes, 428 patent claims 1 through 11 with prejudice. There was no discussion of that. He then provided a stipulation agreeing to dismiss prejudice. He then said, we'll sign the stipulation, but we don't want it filed. And he said, we want the stipulation filed. If these claims are out, they should be out. At that point, they refused. We filed a motion with the court to get the claims dismissed. Cooper's opposition to that motion was based on the fact that they had already withdrawn the claims forever so that the court did not have subject matter jurisdiction. Essentially, they were trying to proceed under supersat to say they couldn't be dismissed prejudice because they're already gone. At the hearing on that motion, Cooper couldn't have been clearer. The lawyer said, quote, they're done. Our chance to bring these claims 1 through 11, in this case, we had the opportunity. It is gone now. We have walked away. They never face these claims again. Judge Stark followed it up and said, well, you will never face them again here and anywhere. Cooper's counsel said, ever. They're done. All right. Let's take the next step before us that we're thinking about. And that is the idea that Claim 12 and its dependent nonetheless were construed overly narrowly and that the fact that Claim 1 was withdrawn didn't really affect that. If I could, Your Honor. So essentially what Cooper is trying to do now is to rewrite Claim 12 to match Claim 1, which has been rejected by the patent office. Let me disagree with that. Claim 1 doesn't require any particular relation whatsoever between the gateway message and the second message. It says send the gateway message. The gateway then creates some second message. Typically, you would expect there to be a relation, but there's no requirement of Claims 1 through 11. Claim 12 says the gateway message has to go to the end user. I don't have any doubt about that. What I do have doubt about is the district court's apparent view that what that means is that there not be any big changes at all in the gateway message as it passes through the gateway to the user. If there can be some, then it seems to me there's a fact question whether the kind of changes you make, roughly speaking, at least some of the times, in the header portion with the address but not the communicative content, not the message portion, is or is not the same thing as the gateway message getting through to the user. That's not the same as Claim 1. It's narrower, much narrower, but it's not the same. Two points, Your Honor. First, Claim 12 requires that the gateway message is transmitted to, and as you acknowledge, that means received by, a plurality of user terminals. The issue is there has to be one message and it has to go to multiple users. For that to happen, the message has to be addressed to multiple users. That message has to go through with those addresses to multiple users. That's what I'm not sure that there's anything in either the language or the specification that supports the idea that transmitting a message to a bunch of people means that without a single change of bit, the identical package, including what's on the outside of the envelope, get to every user. That's not inherent in the notion of transmitting a message to a user. Two points, Your Honor. I think it is exactly what the specification describes. In the specification, there are two primary embodiments in the way that these alerts get to end users. One is via SMS or text messages. That's the embodiment that's described in Claim 1. In that case, you have this gateway message. The whole point of these gateway messages is to limit the number of messages that the messaging subsystem has to send out. They're trying to offload to either the carrier or an email server somewhere else. The problem was they're trying to do a one-to-many, multicast. That was the point of their invention. To do that in the SMS case, they would group the end recipients by their wireless carrier. They would send one email to the wireless carrier. It was an email. It would have a phone number at AT&T.com, a whole slew of those in the address. It would get to the wireless carrier's SMS gateway. The wireless carrier would take the content out of that message and send it off to each phone number as an individual second message in the claim, an individual SMS. That's one embodiment. That's what Claim 1 does. Alternatively, if the message is going to be delivered as an email, what the system did was, again, send one email with all of the users in that domain. The example on the bottom is governmentorganization.gov or something. Everybody in a particular government organization is going to get the alert. Let me just try to advance this. I understand that there are various examples of doing something that serves these purposes in different ways. One example would be sending a single email with 1,000 addresses and a one-sentence content to 1,000 people and everybody sees a massive header or the header is still in there with 1,000 addresses. That's one example. What I don't think is either entailed by the language of Claim 12 or present in the specification is a limitation of the idea that the message goes to the end user, a limitation that requires there be no change whatsoever. I agree that there's an embodiment in which there is no change, but an embodiment doesn't exhaust the range of the language. I think if you're going to say that there can be changes, then there's no way to distinguish Claim 1 from Claim 12. That's, I guess, where I start. Claim 1 does not limit the content of the second message to have any particular relation to the gateway message except being triggered by it. If I could, I disagree with that a bit, Your Honor. Because, again, something Mr. Andre said was incorrect, which is the message is formed by the messaging subsystem and it's addressed by the messaging subsystem and it's sent to the gateway. The gateway then either forwards it on, as in Claim 12, or it creates individual second messages. But there's nothing in the notion of a gateway which the court has construed as an access point to a communication network that provides communication services to the terminal that would allow it to provide different content for that message or have any reason to change the content. The idea is that the gateway is a way to reach user terminals. It's either the wireless carrier in the SMS embodiment or it's the email server at whatever, governmentagency.gov, that holds the inboxes to the recipients who receive the email. I could just step back and say why this matters. The whole point of this patent is to do this multicast. You send out one message to a gateway. Claim 12 requires that that message goes to a plurality of users. They're suing Twitter. What does Twitter do? Twitter sends out individual messages to each gateway, be it a wireless carrier to deliver a tweet on your cell phone or to Apple to deliver a tweet on your iPhone. Those are always individual messages. They're not correlated. They're not sent to a plurality of users. So there's no plurality of users that receive a message from Twitter. And there's no, if I could finish, there's no gateway message that is addressed to a plurality of users. So we don't do this. So what does Cooper do? They knew we didn't do this, right? They knew you had this one-to-many plurality. They discuss it at the claim construction hearing. We explain we didn't do it. So what does their expert do? He says, aha, okay, forget that gateway, the real gateway, the gateway that's run by AT&T that delivers SMS. We're going to say the gateway is this software demon that lives only in the Twitter system. Let me interrupt. Look, I think that in what I think of as the yellow portion of your brief, since page after page is highlighted in yellow as confidential, you make some interesting arguments about whether there's a misidentification of what a real gateway is. Certainly may be a misidentification of the gateway in ordinary parlance, though I'm not sure in the parlance of your agreed claim construction of this term, this term gateway. But that's not the basis on which Judge Stark made his decision. No, I understand, but I'm just saying if the point is at the end of the day, Your Honor, you can say any arbitrary message is the same message, right? That's not the point for claim 12. I understand, but for claim 12, right, the message they're saying is the gateway message in the Twitter system. It's this data structure that lives for a nanosecond that includes a tweet. And if the tweet is from Justin Bieber, it includes two and a half million user identifiers of every follower and a ton of metadata. And if they're going to say that is the same message that ends up on my whatever cell phone because I'm following Justin Bieber, that just can't be the case, right? You can't put that in a 150-character text message. Nothing like it gets sent over a 150-character text message, right? So I don't mean to just say when the claim says transmitting the gateway message to a plethora of users that somehow any message that has that content can count. Otherwise, the claim is as broad as claim 1 or broader. The other point, if I could, Your Honor, Mr. Andre keeps talking about the gateway manipulating or transforming the message. That's not what the claim says. What the claim says is that the gateway receives the message and can accept it and perform operations. It doesn't say it performs operations on the message. It doesn't say it transforms the message. The operation can be putting it in the user's inbox or forwarding it to the device, which is what the patent describes, right? So again, in the email embodiment of the patent, the message goes out. It's got a bunch of addresses in it. It goes to a bunch of people. It goes to the email server that serves that domain. That's the gateway. And it's done. And everybody sees the same message. Cooper even acknowledged that in the reply brief at footnote 2. At the end of the day, they agree with us. That embodiment is described, and that's what claim 12 requires. So I think that both the patent office and Judge Stark got it right. And I think if Cooper can rewrite the claim to match one or say that any part of a message or any similar message gets delivered, meets the requirement, then the claim is indefinite. Is it your view that claim 12 applies only if the gateway message is received by the user without a single change? And maybe I'll speak imprecisely here. Without a single change in a bit that constitutes that message? Yes. It at least has to have... I think that's right. But I think at a minimum, because it says it's transmitted to a plurality of users, it has to have the addresses in it for that plurality of users. You can't create separate messages for each user and transmit those. In that case, you're not transmitting that message to a plurality of users. If the user receives a message that's just addressed to him, that can't meet the requirement of claim 12. Is it your sense that because of the decisions on control, that that were somehow modified and anachronized, that the arguments on infringement... If you look back to Cooper's counsel, that's a make-weight. They dropped claims 1 through 11 because the Patent Office rejected them and issued final rejections. They were pursuing claims 1 through 11 for two years under the old pre-Akamai law. There's no connection between them dropping those claims and Akamai or anything else. They were alleging that Twitter and the other defendants performed every step of those claims in their inter-auditory answers. There was no joint infringement issue in this case, at least that had been surfaced in any way by Cooper. They dropped the claims because the Patent Office rejected them and they didn't want us to do expert reports on rejected claims. It was perfectly clear. And they told Judge Stark, as we saw, these claims are gone. They're toast. Never again. Ever. So the notion that we can relitigate them now because of a change in law that's not even relevant, it's just not proper now. Okay. Thank you, Mr. Haddon. Thank you, Your Honor. Mr. Andre. Thank you, Your Honor. Briefly, just to clarify the record, claims 4, 6, and 7 of claims 1 through 11 were confirmed by the Patent Office. So those weren't dropped because they were rejected. So I think that takes that argument and puts it to proper place. But they weren't dropped. They weren't dropped. That's correct. I agree with that. It's not because they were rejected by the Patent Office. There was an infringement issue. Because if they were just by the Patent Office, we would have kept 4, 6, and 7 in. But we don't know why. But viewed objectively, they were dropped. So what is the ordinary person reading, the interested person, reading all this to make of the fact that they were all dropped? All of the dependent claims. All of the method claims were dropped because of, as I said earlier, the infringement proofs were going to be difficult for us to find because the inducing law at that time required a single actor. And the joint infringement was, we just didn't have good proofs for it. So we went with the stronger claims. That being said, as counsel talked about, he said that the gateway message has never changed. That's their whole argument, the gateway message has never changed. But the court's original claim instruction construed gateway message. And that's not been changed. And it's a message in a format suitable for processing by one or more communication gateways. There's a processing going on. And then the actual claim language itself talks about that the messaging subsystem is configured to form an address for each one or more of the gateway messages. So you have a gateway message and the subsystem is still forming the address for that. So the gateway message exists. It changes. It actually has addresses put into it and it can have addresses pulled off of it. But as Your Honor stated, the key here is that the gateway message is transmitted to the end user, the user terminals. And we've never said otherwise. Our experts say it's transmitted and it's received as a second message. That's the key point. The other aspect that I just want to touch on very quickly is one of ordinary skill in the art. How would they view it? During the claim construction process, the defendants, all three of them, briefed this out. What is the gateway message? They put it in their joint claim charge. They gave the exact same construction that I'm arguing for here today. We may confer on the joint terms. We said ordinary meaning. They gave the construction. We agreed. It was never – it didn't have to go – it was not a dispute between the parties. In the initial expert reports, on the validity expert report, their expert once again stated the same construction that I'm advocating here today. It wasn't until after they got our infringement report they did a 180. So everyone is skilled in the art. Their expert, our expert, their lawyers, our lawyers. We all agreed what this meant. Once they saw our infringement proofs on the claims, they did the switch. So one of the ordinary skills in the art would also support the actual claim language as we discussed here today. Okay. Thank you. Thank you, Mr. Andrew, and thank you, Mr. Haddon. The case is taken in this division.